IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MEKONNEN MEKURIA,          *

    Plaintiff,          *

v.          *          Civil Action No. GLR-17-3176

J. ADAMS,          *

    Defendant.          *

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Department of Public Safety and Correctional Services' ("DPSCS") Response to the Court's November 30, 2017 Show Cause Order.[1] (ECF No. 6). For the reasons set forth more fully below, the Court will deny Plaintiff Mekonnen Mekuria's request for injunctive relief and dismiss the Complaint.

## I. BACKGROUND[2]

Mekuria is an inmate currently housed in the Special Needs Unit ("SNU") at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 1,

---

[1] Also pending are Mekuria's three Motions: (1) Motion for Leave to Proceed In Forma Pauperis (ECF No. 2); (2) Amended Motion for Leave to Proceed In Forma Pauperis (ECF No. 10); and (3) Motion for Reconsideration (ECF No. 11). The Court will grant Mekuria's Motions for Leave to Proceed In Forma Pauperis. Because the Court will dismiss the Complaint, the Court will deny as moot Mekuria's Motion for Reconsideration.

[2] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

ECF No. 1; Liller Decl. ¶ 4, ECF No. 6-1).[3] On October 27, 2017, Mekuria filed a Complaint against Justin Adams,[4] a correctional officer at NBCI. (ECF No. 1).[5] In Mekuria's Complaint, he alleges that his life is in danger, that he is being sexually assaulted on a daily basis, and that Adams stole his property. (Compl. at 2–3). Mekuria requests that he be transferred to a different prison and seeks monetary damages. (Id. at 3).

On November 30, 2017, the Court directed counsel for DPSCS to address the allegations in Mekuria's Complaint and to show cause why injunctive relief should not be granted in favor of Mekuria. (Nov. 30, 2017 Order, ECF No. 3). On December 22, 2017, DPSCS filed its Response.[6] (ECF No. 6).

## II. DISCUSSION

### A. Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish four elements: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an

---

[3] Citations to the Complaint refer to the pagination assigned by the Court's electronic docketing system.

[4] The Court will direct the Clerk to amend the docket to reflect Adams' full name.

[5] On January 10, 2018, Mekuria filed an Amended Complaint against Adams and three correctional officers. (ECF No. 9). Mekuria alleges that they placed him in an isolation cell and kept him there even though he had not committed an infraction that would warrant doing so. Because the allegations in the Amended Complaint do not relate to the facts alleged in the original Complaint but possibly state a constitutional claim, the Court will direct the Clerk to docket the Amended Complaint as a new civil case.

[6] On December 27, 2017, the Court received correspondence from Mekuria. (ECF No. 7). Mekuria's correspondence repeats more of the same allegations raised in the Complaint.

injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "All four requirements must be satisfied." Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009) (citing Winter, 555 U.S. at 20), vacated, 559 U.S. 1089 (2010), and adhered to in part sub nom. The Real Truth About Obama, Inc. v. FEC, 607 F.3d 355 (4th Cir. 2010). A preliminary injunction may only be awarded upon a "clear showing that, among other things, [the plaintiff] is likely to succeed on the merits at trial." Id. at 345 (internal quotation marks omitted).

Here, Mekuria fails to establish any of the elements required to impose a preliminary injunction. DPSCS's Response, accompanied by verified business records and a declaration under oath from the Mental Health Program Manager at NCBI, Bruce Liller, indicate that the allegations raised in the Complaint are the product of Mekuria's mental illness. (Liller Decl. ¶¶ 1, 4–11). Liller explains that Mekuria is housed in the SNU because he has a delusional disorder that "lends itself to outlandish claims" and involves "repetitive, obsessive tendencies." (Id. ¶ 4). Liller further explains that Mekuria's disorder manifests itself in two primary themes. (Id. ¶ 7). First, Mekuria believes that correctional staff (especially female) "want to have sex with him." (Id.). Second, Mekuria believes that "he is subjected to electronic shock, often to his penis and often with a sexual component." (Id.). Liller avers to a reasonable degree of certainty in the field of psychology that Mekuria's allegations that he is tortured using electricity, sexually assaulted on a daily basis by electronic devices, and similar allegations are all a product of Mekuria's delusional disorder. (Id. ¶ 11).

3

DPSCS's Response and supporting documentation indicate that allegations similar to those raised in Mekuria's Complaint have been the topic of administrative investigations. When Mekuria filed written claims of sexual assault through the administrative remedy procedure or contacted the Prison Rape Elimination Act ("PREA") hotline to lodge similar allegations, the Internal Investigation Division ("IID") investigated them and concluded that they were unfounded and possibly a product of Mekuria's delusional disorder. (Defs.' Resp. Ex. 2, ECF No. 6-2; id. Ex. 5 at 2–28, 42–55, ECF No. 6-5; Rozas Decl. ¶ 4, ECF No. 6-4).

Mekuria is assigned to the SNU for purposes of providing him access to psychology staff and to insure that he is "less likely to present a safety risk to himself and to others." (Liller Decl. ¶¶ 7–8). Liller explains that the correctional officers assigned to work at the SNU are provided with special training to deal with inmates who suffer from mental illness like Mekuria. (Id.). Liller further explains that inmates housed in the SNU meet monthly with psychology staff to discuss their concerns and treatment options; such meetings are not provided to general population inmates. (Id. ¶ 9).

The only named Defendant, Adams, states under oath that he did what he could to promote Mekuria's safety and welfare and that he never stole any of Mekuria's property. (Adams Decl. ¶¶ 6, 8, ECF No. 6-3). Adams also explains that he no longer works in the SNU, (Id. ¶ 1), and, consequently, no longer has any contact with Mekuria, obviating any need for injunctive relief to prevent Mekuria's contact with Adams.

Mekuria does not offer any evidence to rebut the assertions in DPSCS's Response and its accompanying documentation. Indeed, Mekuria's December 27, 2017

4

correspondence (ECF No. 7) and Amended Complaint (ECF No. 9) repeat many of the same allegations and attempt to bring new ones against persons not party to this suit. Put simply, they are not responsive to DPSCS's assertions and evidence.

In sum, Mekuria has not put forth any evidence to satisfy the necessary elements for imposing a preliminary injunction. The Court, therefore, concludes that a preliminary injunction is not warranted in this case. Accordingly, the Court will deny Mekuria's request for injunctive relief.

B.  **Dismissal of the Complaint under 28 U.S.C. § 1915(e)(2)(B)(i)**

Mekuria filed his Complaint in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1) (2018), which permits an indigent litigant to commence an action in this Court without prepaying the filing fee. To guard against possible abuses of this privilege, the statute requires the Court to dismiss any claim that is frivolous or malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) (2018). To this end, when considering whether a claim is frivolous, § 1915(e)(2) grants courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). A complaint is frivolous where "it lacks an arguable basis either in law or in fact." McLean v. United States, 566 F.3d 391, 399 (4th Cir. 2009) (quoting Neitzke, 490 U.S. at 327). Frivolous claims include "those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'" Id. (quoting Gladney v. Pendleton Corr. Facility, 302 F.3d 773, 774 (7th Cir. 2002); then quoting Denton v. Hernandez, 504 U.S. 25, 29 (1992)).

In reviewing Mekuria's Complaint under § 1915(e)(2)(B)(i), the Court is mindful that pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Pardus, 551 U.S. at 94 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Nonetheless, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)).

Here, in what the Court construes as a § 1983 claim, Mekuria alleges that a former psychology department employee, "Mrs. Wilson," conspired with corrections officers in the "control room" to "erect[ ] [his] penis extremely by electronic devices" and then "came to my door and asked me to perform sex!" (Compl. at 2). Mekuria further states that because he declined her proposition, Mrs. Wilson hired his cellmate to "sexually... assault and kill me" and that his cellmate sexually assaulted him in the middle of the night. (Id.). Even construing Mekuria's allegations liberally, the Court concludes that they "describe[e] fantastic or delusional scenarios" that are "clearly baseless." Neitzke, 490 U.S. at 327–28. The Court will, therefore, dismiss Mekuria's § 1983 claim as frivolous.

Mekuria also brings a state law claim against Adams, alleging that he "stole [Mekuria's] trimmer and surge protectors and [five] library books." (Compl. at 2). Although these allegations are not frivolous, because the Court will dismiss

6

Mekuria's § 1983 claim, the sole claim over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over this state law claim. See 28 U.S.C. § 1367(c)(3) (2018) (providing that "district courts may decline to exercise supplemental jurisdiction over a state claim if . . . the district court has dismissed all claims over which it has original jurisdiction"). The Court will, therefore, dismiss Mekuria's state law claim. If Mekuria wishes to pursue a cause of action against Adams for allegedly stealing his property, Mekuria may do so in state court.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Mekuria's request for injunctive relief and dismiss the Complaint. A separate order follows.

Entered this 30th day of April, 2018

/s/
George L. Russell, III
United States District Judge